In the Matter of the NEW YORK TEACHERS PENSION ASSOCIATION, INC., et al., Respondents, v TEACHERS' RETIREMENT SYSTEM OF THE CITY OF NEW YORK, Appellant.

First Department, December 4, 1979

APPEARANCES OF COUNSEL

*Jeffrey D. Friedlander* of counsel *(L. Kevin Sheridan, Paul T. Rephen* and *Thomas R. Nathan* with him on the brief; *Allen G. Schwartz, Corporation Counsel),* for appellant.

*Howard N. Meyer* for respondents.

**OPINION OF THE COURT**

Sullivan, J.

This is an article 78 proceeding in the nature of mandamus to compel disclosure of the names and home addresses of retired New York City school teachers from the Teachers' Retirement System of the City of New York (Retirement System).

Petitioners are the New York Teachers Pension Association, Inc. (Association), a not-for-profit corporation, the principal purpose of which is the investigation of legislation and other government action affecting the pension funds of the Retirement System, and William Withers, the president of the Association.

On June 22, 1977, Mr. Withers, on behalf of the Association, wrote to Wallace Sullivan, the executive director of the Retirement System, requesting that the Association be supplied with a list containing the names and home addresses of retired city school teachers. Follow-up letters were sent on July 16 and October 3. On October 19, Mr. Sullivan denied the request on the ground that the names and addresses were privileged information and noted that "[w]e have always treated all data concerning our active and retired teachers as confidential."

The Association filed an appeal with the Retirement System pursuant to section 89 (subd 4, par [a]) of the Public Officers Law. The question was referred to the office of the Corporation Counsel which, by letter dated July 3, 1978, recommended denial: "In accord with the State Freedom of Information Law (Public Officers Law, Article 6), the names and addresses of members of the Retirement System may be

withheld to prevent an unwarranted invasion of personal privacy. Public Officers Law, § 87(2)(b). The law is especially protective of the home addresses of public employees (§ 89[2]) and of the names and addresses of individuals which are kept in the files of an agency where such names and addresses may be used by private persons or entities for commercial or fund-raising purposes. § 89[2](b)(iii). Accordingly, you may deny the request for the information sought." Consequently, on July 12, 1978, the Retirement System confirmed its original refusal. After the denial of a subsequent request for reconsideration, this proceeding was commenced.

In claiming a right of access to the Retirement System's records of the names and home addresses of its retirees, petitioners rely upon the Freedom of Information Law. (Public Officers Law, art 6), which is patterned after the Federal Act (US Code, tit 5, § 552). In opposition to the petition the Retirement System asserted one of the statutory bases for denying access, viz., that disclosure of the lists of the names and addresses of the retirees would constitute an unwarranted invasion of personal privacy. (Public Officers Law, § 87, subd 2, par [b]; § 89, subd 2.) Specifically, the Retirement System claimed that the lists would be used for commercial or fund-raising purposes and that disclosure of information which is basically not relevant to the Retirement System's work would result in personal hardship to the retirees. Each of these grounds constitutes, by statute, an instance of unwarranted invasion of personal privacy. (Public Officers Law, § 89, subd 2, par [b], cls iii, iv.)

Special Term rejected these arguments and granted the petition, finding that the Retirement System had failed "by a substantial measure" to meet its burden of establishing that the information sought was protected from disclosure.

While adhering, no doubt in good faith, to the position that it is not seeking to prevent disclosure of information potentially embarrassing or damaging to it, but, rather, attempting only to protect the privacy rights of retired teachers, the Retirement System has shifted the focus of its opposition on this appeal. Instead of arguing that the names and addresses, although otherwise disclosable under the statute, are exempt because publication would constitute an unwarranted invasion of privacy, it now contends that a change in statutory language in 1977 was intended to exclude private addresses of retirees from the ambit of the Freedom of Information Act.

The essence of its appellate argument is that the information which petitioners seek is not relevant to the decision-making process of the Retirement System, and hence not within the purview of what a governmental agency must disclose.

In support of this argument, the Retirement System contrasts the language of the current section 87 (subd 3, par [b]) of the Public Officers Law (added by L 1977, ch 933, § 1, eff Jan. 1, 1978), requiring each agency to maintain "a record setting forth the name, *public office address,* title and salary of every officer or employee" (emphasis added), with the language found in the Freedom of Information Law when it was originally enacted:

"Each agency, in accordance with its published rules, shall make available for public inspection and copying: * * *

"an itemized record setting forth name, *address,* title and salary of every officer or employee of an agency". (Former Public Officers Law, § 88, subd 1, par g, added by L 1974, ch 578, § 2; emphasis added.)

Thus, the Retirement System argues, by amending the Public Officers Law to restrict the officer or employee address which the agency must maintain to "public office address", the Legislature intended to impose a stricture against the disclosure of the residential addresses of government employees. We disagree.

Critical to a resolution of the issue before us is a recognition of the function of section 87 (subd 3, par [b]), upon which the Retirement System relies, in the statutory scheme of the Freedom of Information Law. It speaks only of those records which, at the very least, must be maintained by an agency. Section 87 (subd 3, par [b]) does not, by its terms, expressly or implicitly, restrict disclosure to only those records enumerated therein. Nor does it purport to set forth an exhaustive list of the records or files which must be made available for public inspection. It is subdivision 2 of section 87 of the present Public Officers Law, which provides that, subject to specified exceptions listed therein, each agency shall "make available for public inspection and copying *all records*" (emphasis added), that defines the extent to which the public shall have access to governmental agency records.

Evidence of the extent to which the Legislature has expanded the scope of disclosure of public records may be ascertained from the difference in language between the original Freedom of Information Law, and the current statute,

which is the product of the 1977 amendments. The original act provided: "Each agency, in accordance with its published rules, shall make available for public inspection and copying" (former Public Officers Law, § 88, subd 1, added by L 1974, ch 578). What followed were eight categories or records, listed "a" through "h", which were to be made available. The obvious intent was that only those specified materials need be disclosed.* Where the old law enumerated those records which were the subject of public disclosure to the obvious exclusion of those not listed, subdivision 2 of section 87 of the present law, as already noted, provides for the disclosure of all records, subject to certain exemptions. Thus, the Freedom of Information Law now provides for omnibus disclosure, subject to certain enumerated exceptions, rather than merely a schedule of disclosable items.

The statutory language was "mandatory and as to those items required to be disclosed the [agency had to] comply." (*Matter of Dunlea v Goldmark*, 54 AD2d 446, 449.) Under the old law, however, if an agency did not maintain a record within a category subject to public disclosure, it was not required to prepare one. (*Matter of Gannett Co. v County of Monroe*, 59 AD2d 309, 313, affd 45 NY2d 954; see, also, *Matter of D'Alessandro v Unemployment Ins. Appeal Bd.*, 56 AD2d 762.) The statute mandated an agency both to "maintain and make available" only two types of documents, a general index of its available records and a record of final votes in every agency proceeding. (Former Public Officers Law, § 88, subds 3, 4.) Under the present law, the twofold requirement has been extended to include "the name, public office address, title and salary of every officer and employee of the agency". (Public Officers Law, § 87, subd 3, par [b].) Thus, an agency is now not only required to make all its records available for public disclosure, as discussed above, but in order to assure minimum disclosure, it must maintain files in three categories. (See, generally, Public Officers Law, § 87.) That only the public address must be maintained, however, does not mean that a private address, if available, should not be disclosed.

The Freedom of Information Law was enacted in recognition of the principle "that government is the public's business and that the public, individually and collectively and represented by a free press, should have access to the records of

---

* For a discussion of the intent of the Legislature under the old law see *Matter of Sheehan v City of Binghamton* (59 AD2d 808).

government" (Public Officers Law, § 84.) In interpreting the predecessor statute of the Freedom of Information Law (Public Officers Law, § 66, L 1909, ch 51, repealed by L 1974, ch 578, § 1, eff Sept. 1, 1974), the Court of Appeals has construed the provisions of the law broadly: "the spirit and purpose of the statute * * * must be borne in mind. 'The legislative intent is the great and controlling principle. Literal meanings of words are not to be adhered to or suffered "to defeat the general purpose and manifest policy intended to be promoted".' " *(Matter of New York Post Corp. v Leibowitz,* 2 NY2d 677, 685, citing *People v Ryan,* 274 NY 149, 152; see, also, *Matter of United Press Assns. v Valente,* 308 NY 71, 83-84.) "[G]overnment is the people's business and * * * the people have a right to know the processes by which government decisions are made and actions taken." (Governor's Memorandum, NY Legis Ann, 1974, p 392.) In the circumstances presented here the most significant portion of the public affected by, and interested in, the workings of the Retirement System are the retirees. They are neither present nor former employees of the Retirement System. Nor do they have a "public office address". Their names and addresses are not merely a private concern, irrelevant to the operations of the Retirement System. The existence of the retirees is the Retirement System's *raison d'etre,* and their mailing addresses are vital to the circulation of information concerning the processes of the system. We note, too, the clear command in 21 NYCRR 1401.1 (d): "Any conflicts among laws governing public access to records shall be construed in favor of the widest possible availability of public records."

In an analogous situation, this court approved the release of the home addresses of property owners similarly situated to an activist association of affected property owners because the purpose involved—the dissemination of facts and opinions regarding a certain project and its effects—was "endowed with a public interest". *(Matter of Smigel v Power Auth. of State of N. Y.,* 54 AD2d 668.) A public interest is also involved here, since the Association intends to provide the retirees with information relevant to their pensions.

Of course, any document, even if required to be kept, may nevertheless be excluded from public disclosure if it falls within one of the exemptions listed under subdivision 2 of section 87. The Retirement System argues that disclosure of the names and private addresses is an unwarranted invasion

of personal privacy because the solicitation of membership dues from the retirees would constitute a use of this information for "commercial or fund-raising purposes", one of the statutory bases for denying access. (Public Officers Law, § 87, subd 2, par [b]; § 89, subd 2, par [b], cl iii.)

As a nonprofit organization the Association cannot have as its purpose a design to reap a "pecuniary profit or financial gain" (Not-For-Profit Corporation Law, § 102, subd [a], pars [5], [10]), so that any commercial venture in which it engaged would have to serve an end which is not profit oriented. And, although it appears that until now New York courts have not expressly dealt with the question, we do not view dues solicitation as a form of fund-raising within the meaning of the Freedom of Information Law. Inherent in the nature of the dues solicitation here are First Amendment privileges. The First Amendment "rests on the assumption that the widest possible dissemination of information from diverse and antagonistic sources is essential to the welfare of the public" *(Associated Press v United States,* 326 US 1, 20), and "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people" *(Roth v United States,* 354 US 476, 484).

Presumably, any sums realized from the collection of dues from these retirees would be used to defray the costs of gathering and disseminating information concerning their pensions, as well as the expenses of any lobbying efforts on their behalf and, if necessary, the maintenance of lawsuits to protect their interests. A balancing of interests, such as has been undertaken by the Federal courts in interpreting the Federal Freedom of Information Act (see *Wine Hobby USA v United States Internal Revenue Serv.,* 502 F2d 133; *Disabled Officer's Assn. v Rumsfeld,* 428 F Supp 454), would compel the conclusion that dues solicitation is merely a device to achieve the primary and acceptable purpose of information distribution.

Finally, we note, as did Special Term, that the burden of showing that the material sought is protected is upon the agency which seeks to withhold disclosure. (Public Officers Law, § 89, subd 4, par [b].) The Retirement System has failed to meet this burden. Its argument that petitioner might sell the list of retirees' names and addresses to other organizations, not-for-profit or otherwise, is speculative and does not

suffice to overcome the Association's interest in obtaining the information.

Accordingly, the judgment, Supreme Court, New York County (EGETH, J.), entered February 16, 1979, directing respondent to make available to petitioners a list of the names and addresses of its beneficiaries should be affirmed, without costs or disbursements.

KUPFERMAN, J. P., BIRNS, LANE and Ross, JJ., concur.

Judgment, Supreme Court, New York County entered on February 16, 1979, affirmed, without costs and without disbursements.