## (March 3, 1983)

■ In the Matter of NEW YORK VETERAN POLICE ASSOCIATION, Appellant, v NEW YORK CITY POLICE DEPARTMENT ARTICLE I PENSION FUND et al., Respondents. — Order and judgment (one paper) of the Supreme Court, New York County (Alvin Klein, J.), entered November 18, 1981, denying petitioner's application for an order compelling respondents to provide access to the names and addresses of all retirees of the New York City Police Department currently receiving pensions and annuities, and dismissing the petition is reversed, on the law, and the petition is granted, without costs. Petitioner, the New York Veteran Police Association (the Association), is a not-for-profit corporation, organized under the laws of New York in 1905. Its primary purpose is to provide its members, retired police officers, with services and information concerning pensions and other matters of common interest. Until 1978, the Association had been given regular access to the names and addresses of retired and retiring New York City police officers from the respondents, the New York City Police Department Article I and Article II Pension Funds. After that year the respondents ceased to provide such information to the petitioner. The Association requested this information from the records access officer of each respondent pursuant to the Freedom of Information Law (Public Officers Law, §§ 84-90). These requests were denied on the ground that compliance would invade the privacy of retired police officers and their families and might endanger their lives and safety. In the CPLR article 78 proceeding, Special Term denied the relief sought for the "safety" reasons given by respondents. It also cited as grounds for the denial that the Association "apparently uses this address list to solicit new members and sell police-related goods" and "that it has been the practice of petitioner to permit 'outsiders' access to the lists provided". The record, however, before Special Term demonstrated that the lists in the possession of the Association had been safeguarded. Also a transgression which may have occurred by an outside fund-raising agency once used by the Association, cannot fairly be imputed to the Association. The contract with that agency was promptly terminated by the petitioner (as the respondents' own evidence indicates) when the complaints were made known to petitioner. The fact that the petitioner may be attempting to expand its membership through solicitation of those retirees on the lists maintained by respondents does not make out a showing of "fund raising" on the part of petitioner. "As a nonprofit organization the Association cannot have as its purpose a design to reap a 'pecuniary profit or financial gain' (Not-For-Profit Corporation Law, § 102, subd [a], pars [5], [10]), so that any commercial venture in which it engaged would have to serve an end which is

not profit oriented. And, although it appears that until now New York courts have not expressly dealt with the question, *we do not view dues solicitation as a form of fund-raising within the meaning of the Freedom of Information Law*. Inherent in the nature of the dues solicitation here are First Amendment privileges. The First Amendment 'rests on the assumption that the widest possible dissemination of information from diverse and antagonistic sources is essential to the welfare of the public' (*Associated Press v United States,* 326 US 1, 20), and 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people' (*Roth v United States,* 354 US 476, 484). Presumably, any sums realized from the collection of dues from these retirees would be used to defray the costs of gathering and disseminating information concerning their pensions, as well as the expenses of any lobbying efforts on their behalf and, if necessary, the maintenance of lawsuits to protect their interests. A balancing of interests, such as has been undertaken by the Federal courts in interpreting the Federal Freedom of Information Act (see *Wine Hobby USA v United States Internal Revenue Serv.,* 502 F2d 133; *Disabled Officer's Assn. v Rumsfeld,* 428 F Supp 454), would compel the conclusion that dues solicitation is merely a device to achieve the primary and acceptable purpose of information distribution." (*Matter of New York Teachers Pension Assn. v Teachers' Retirement System of City of N. Y.,* 71 AD2d 250, 256; emphasis added.) Subdivision 2 of section 87 of the Public Officers Law provides that each agency shall make available to the public for inspection and copying all records, with certain limited exceptions. The courts have consistently ruled that the Legislature intended a liberal approach to Freedom of Information Law provisions (*Miracle Mile Assoc. v Yudelson,* 68 AD2d 176, mot for lv to app den 48 NY2d 706), and statutory exemptions from disclosure must be narrowly construed to allow maximum access (*Matter of Dunlea v Goldmark,* 54 AD2d 446, 449, affd 43 NY2d 754). The only point raised by respondents which could feasibly support their nondisclosure is the defense that such disclosure might endanger the lives of the retired police officers. However, such a contention is without support in the record below and is bolstered completely by speculation. As noted, the requested information *had been made available* to petitioner up until 1978 and no incident has been set forth by respondents involving danger to an officer from such disclosure. In a case where pistol license applications were permitted to be inspected and the same contention of potential danger upon disclosure was made, the court stated: "respondent argues that serious harm might ensue if the records were open to inspection. He speculates that criminals will spend their diurnal hours at police stations and county clerks' offices searching for likely 'targets' who may then be nocturnally attacked for their weapons or those valuables the weapons were carried to safeguard. This suggestion is at best speculative; the ordinary mugger may generally prefer the little old lady with a string handbag to the subject lethally armed with a loaded pistol. But even if this were not true, *the Legislature must have been deemed to have considered the risks, and to have determined that the merits of disclosure outweighed the dangers.*" (*Matter of Kwitny v McGuire,* 102 Misc 2d 124, 126, affd for reasons of Wallach, J., 77 AD2d 839, affd for reasons stated in opn of Wallach, J., 53 NY2d 968; emphasis added.) Concur — Carro, Asch and Milonas, JJ.

Silverman, J., concurs on constraint of *Matter of New York Teachers Pension Assn. v Teachers' Retirement System of City of N. Y.* (71 AD2d 250).

Murphy, P. J., dissents in a memorandum as follows: Special Term correctly denied this application for two basic reasons. First, there would be an unwarranted invasion of the police retirees' right to personal privacy by providing

the requested lists to the petitioner. (Public Officers Law, § 87, subd 2, par [b].) The Committee on Public Access to Records (Committee) is charged with the oversight of the Freedom of Information Law (FOIL) (Public Officers Law, § 89, subd 1). The Committee's interpretation of the statute, if not irrational or unreasonable, should be upheld (*Matter of Sheehan v City of Binghamton,* 59 AD2d 808). The record contains several advisory opinions from the Committee with regard to the proper interpretation of section 87 (subd 3, par [b]) of the Public Officers Law. In one such opinion, typical of the others, the executive director of the Committee directs the following response to the director of personnel for Orange County: "You have asked whether the County is obligated to disclose the home address of an employee, first, when an attorney's office requests the home address to serve legal papers and, second, when you are 'required to furnish full personnel information via a court order'. It is noted at the outset that, as a general rule, it is the Committee's view that the home address of a public employee need not be disclosed under the Freedom of Information Law. I direct your attention initially to § 87(3)(b) of the Freedom of Information Law, which states that each agency shall maintain * * * 'a record setting forth the name, public office address, title and salary of every officer or employee of the agency' * * * It is emphasized that the language quoted above represents a change from the analogous language in the Freedom of Information Law as originally enacted in 1974. Under that statute, the payroll record provision required that an agency make available a listing by name, address, title and salary; no indication of which address, home or business, was specified. Several agencies that had disclosed home addresses contended that public employees were contacted and in some instances harassed at their homes due to the disclosure of home addresses. Consequently, one among a series of amendments recommended by the Committee that became effective on January 1, 1978, involved a clarification to the effect that the payroll listing should make reference to the public office address of public employees * * * From my perspective, the home address generally has no relevance to the performance of the official duties of a public employee. Therefore, it is my view that a record indicating the home address of a public employee may be withheld under the Freedom of Information Law on the ground that disclosure would constitute an 'unwarranted invasion of personal privacy'." Since the advisory opinions of the Committee in this matter are not unreasonable or irrational, they should be followed in the present case. Under section 87 (subd 3, par [b]) of the Public Officers Law there is no necessity to maintain or supply the private address of a public employee. There would appear to be even less reason to supply a private address after that public employee has retired. An unwarranted invasion of privacy would also occur under section 89 (subd 2, par [b], cl iii) of the Public Officers Law, which provides as follows: "An unwarranted invasion of personal privacy includes, but shall not be limited to * * * iii. sale or release of lists of names and addresses if such lists would be used for commercial or fund-raising purposes". The petitioner claims that it is a not-for-profit corporation, and thus it is not engaged in commercial activity. According to the petitioner, its fund-raising activities merely permit it to lobby, disseminate information, and otherwise help the retirees and its honorary members. It denied that it has ever sold any list containing the retirees' names. A set of interrogatories was mailed by the respondents to the petitioner. For the period July 1, 1979 to June 30, 1980, petitioner admitted that its income was $467,704. Using the petitioner's answers and figures, $104,000 was expended for salaries and $15,000 for lobbying during that same period. The sum of $56,450 was spent for rent, mailings and similar business items. Overall, income seemed to exceed expenses by $292,249 for that period. In addition to the fact that petitioner

apparently had an enormous profit for that one-year period, it provides sundry business and travel services to the membership at advantageous rates. Hence, it is fair to conclude that the petitioner is engaged in commercial activity. Moreover, petitioner's fund-raising activity collects much more than the minimum dues needed to function at a reasonable level. Dues for a one-year period range from $50 to $1,000. The petitioner solicits both civilian and commercial members. Indeed, petitioner used a professional fund raiser, East/West Theatrical Producers, Inc. (Theatrical) for a number of years. Theatrical's services were terminated one month after the instant petition was filed. During its years of service to the petitioner, Theatrical had approximately 60 complaints lodged against it with the Better Business Bureau. Even though petitioner denies that it sold any list of police retirees, it evidently made these lists available to Theatrical for fund-raising purposes and will undoubtedly make the lists available to any successor fund raiser. There is no evidence in the record as to whether Theatrical might have sold or further disseminated these lists. However, in view of Theatrical's questionable practices, it is not unlikely that Theatrical itself sold or passed its lists onto third parties. The foregoing facts have been developed to show that petitioner is not the eleemosynary institution it represents itself to be. The proof shows that it is a commercial venture aimed at maximizing profits. In many areas, its promises to police retirees border upon the untruthful. For example, it promises to lobby upon their behalf but, according to petitioner's own attorney, it spends less than $1,000 per year in the area. The petition should have been denied under section 89 (subd 2, par [b], cl iii) of the Public Officers Law because petitioner undoubtedly intends to release the private names and addresses to its next fund raiser. Those names and addresses will also be used by petitioner for its commercial and professional fund-raising purposes. The petition should have been dismissed for the second reason that the retirees' lives and safety would be endangered if their names and addresses were released (Public Officers Law, § 87, subd 2, par [f]). While police officers are actively employed, their private addresses and records are scrupulously protected by the statutory scheme (see, e.g., CPL 240.50, subd 4; Civil Rights Law, § 50-a; Charter of City of New York, § 1114). Nonetheless, it is petitioner's contention that the officers do not need any statutory protection once they retire. This argument on petitioner's part is quite naive. It ignores the fact that many individuals, who might seek retaliation against an arresting officer, will not be released from incarceration for many years after that officer's retirement. It is fortunate that, to this point, there are no reported instances where a retiree has been injured because his name was revealed to the petitioner. Although others may be prepared to gamble on a retiree's life or safety through the present disclosure, I am not. It is not the function of the judiciary to take such risks. If the Legislature wishes to disclose the names of police retirees, that is its prerogative and it may pass appropriate legislation. A passing comment should be made upon this court's decision in *Matter of New York Teachers Pension Assn. v Teachers' Retirement System of City of N.Y.* (71 AD2d 250, mot for lv to app den 49 NY2d 701). Although I would disagree with the analysis therein relating to section 87 (subd 3, par [b]) of the Public Officers Law, the facts are otherwise quite different from those presented in this proceeding. The most obvious difference is that retired police officers are more apt to have their lives or safety endangered than retired teachers. Moreover, the petitioner in this proceeding is clearly engaging in commercial and fund-raising activity while the Teachers Pension Association did not do so. For the reasons stated, I would affirm.