*569 OPINION OF THE COURT
George A. Murphy, J.
"Nearly all legislation involves a weighing of public needs as against private desires; and likewise a weighing of relative social values.” (Truax v Corrigan, 257 US 312, 357 [1921] [Brandeis, J., dissenting].)
In this action for, inter alla, compensatory damages together with attorneys’ fees and punitive damages, for permission to proceed as a class action and for a declaratory judgment, the parties agree that there are no issues of fact and the plaintiff moves for summary judgment while the defendants cross-move for the same summary relief.
The facts are that the plaintiffs sought to obtain their patient records from the defendant hospitals for the sole purpose of determining, with the aid of counsel, if they had a cause of action and could commence a lawsuit. Notwithstanding this exclusive purpose, the attorney, with authorizations signed by the patients, demanded that the hospital deliver to him complete copies of the patients’ records at a maximum charge of 75 cents per paper copy, pursuant to the Public Health Law which fixes that charge as the maximum patients seeking copies under the Public Health Law may be required to pay. The defendants declined to provide the requested copies as demanded and insisted, rather, that the patients would have to pay the reasonable costs of the service as a condition to receiving them since, in the circumstances, the hospital was not bound by the Public Health Law maximum erroneously relied upon by the patients and their counsel. The mere recitation of the facts proclaims the crucial issue that has resulted in this action by the plaintiffs against the defendant hospitals.
Notwithstanding past history where patients obtained their hospital records regardless of the asserted or acknowledged reason for the request or authority upon which they relied (see, Matter of Ventura v Long Is. Jewish Hillside Med. Center, 112 AD2d 437 [2d Dept 1985]; Matter of Hernandez v Lutheran Med. Center, 104 AD2d 368 [2d Dept 1984]; Matter of Kaplan v North Shore Univ. Hosp., 117 Misc 2d 734 [Sup Ct, Nassau County 1982]), the parties to this litigation are anxious and willing to confront the issue "head-on”. The Bar is desirous of being able to obtain the subject records at as low a cost factor as legally possible while the hospitals aim at a fiscal discipline based on reimbursable costing-out of services rendered to *570 avoid an automatic deficit in any specific area of hospital care and service. Both objectives appear to be sensible and worthy. The question, in the instant matter, is which position is legal and which is illegal as a matter of law.
Unfortunately, the amended verified complaint fails to present the issues, as clarified hereinbefore, in a coherent or sufficiently pleaded manner. The complaint makes allegations and asks for relief so general and ambiguous that it requires the court, inappropriately, to speculate just what is encompassed by the suit and whom the suit is brought to protect or benefit as a matter of fact — or of law. The court is not obliged to resort to affidavits or legal memoranda by learned counsel to try to salvage an otherwise deficient complaint and chooses not to do so on this instance. Nevertheless, the court, sensitive to the current developing and vigorous struggle between two very important professions, the legal and health providers, whose services to the public are best freed of such internecine relations, will address the issues presented if only in the public’s interest.
The Legislature has enacted the Civil Practice Law and Rules to govern litigation and prelitigation disclosure in this State (see, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3101:l et seq.). The courts are and should be concerned about any tendency to avoid, or especially to evade, the provisions of the CPLR which are designed throughout to involve the court’s role of governance and determination by order on notice. From the preaction phase of litigation (see, CPLR 3102 [c]) to the time of trial when all discovery presumably is completed (see, 3120 [a], [b]), the court rules on the disclosure rights of the parties in all aspects thereof if disputes, requiring judicial disposition, arise. Thus, Professor David D. Siegel in his treatise, New York Practice § 352, at 510 (2d ed 1991), notes that when a hospital refuses disclosure to a patient to aid in the commencement of an action, CPLR 3102 (c) is triggered. With greater elaboration in his Practice Commentaries, Professor Siegel writes as follows:
"If a person has a cause of action against another but needs assistance from the disclosure devices before being able to sue on it, disclosure is available under CPLR 3102 (c). Disclosure in this instance may be sought to enable [plaintiff] to determine the form that the action should take. See In Re Pelley, 43 Misc. 2d 1082, 252 N. Y. S. 2d 944 (1964). As long as the potential plaintiff can demonstrate that there is a cause of *571 action, pre-action disclosure can be invoked to determine who the defendant should be.
"It is necessary, however, that the applicant demonstrate that there is at least a prima facie cause of action. Pre-action disclosure under CPLR 3102 (c) is not available to the would-be plaintiff to determine if he has a cause of action” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3102:4, at 311).
It seems to this court that without further specific quotation, it is clear that preaction disclosure pursuant to the CPLR may not be evaded by resort to an unrelated discovery "tool” contained in another statute for a specific public interest served by that other statute. To permit such patent "statute shopping” with the resultant bypassing of the CPLR’s control and protection provisions makes a shambles of the CPLR and compromises the court’s function of timely and effective governance over disclosure matters. This very point relating to the CPLR has heretofore been well expressed by the courts in an analogous contest between the appropriate application of the CPLR and the Freedom of Information law (Public Officers Law art 6). "We have noted in the past that the law was not intended to afford a new research tool to private litigants in matters not affected by a public interest (Matter of D’Alessandro v Unemployment Ins. Appeal Bd., 56 AD2d 762, 763 [see, e.g., Matter of New York Teachers Pension Assn. v Teachers’ Retirement Sys., 71 AD2d 250]). Petitioner has not shown that his request is anything more than an ill-advised shortcut to the Civil Practice Law and Rules discovery procedures” (see, Arzuaga v New York City Tr. Auth., 73 AD2d 518, 519 [1st Dept 1979]).
Again, in 1982, the point was reiterated in the case of Brady & Co. v City of New York (84 AD2d 113, 115 [1st Dept 1982]), where it was stated:
"It is apparent that the information sought and obtained under the Freedom of Information Law was the kind of information normally obtainable by the disclosure devices authorized under the CPLR and pertinent court rules.
"We have observed that the Freedom of Information Law 'was not designed to benefit litigants,’ nor was its purpose 'to ease the research burden of private litigants’ ”.
It should be beyond dispute that the disclosure provisions of the CPLR are intended and requisite to prevent abuse and harassment in demanding disclosure of information from *572 other persons or entities, especially in preaction attempts to aid in the commencement of a lawsuit. It is essential therefore for the courts to protect and defend the efficacy of the CPLR and ward off attempts to evade or to subvert its precise mechanisms and objectives designed to be invoked under well-defined and timely implemented judicial scrutiny and control.
When the Legislature amended sections 17 and 18 of the Public Health Law, could it have intended to provide a sure means to enable a preaction litigant bent on discovery to avoid the governance of the CPLR? This court thinks not.
The Public Health Law of the State of New York is, beyond any doubt, a public interest law for the purpose of providing a health care and management system affording patients and health care providers a fast, fair and serviceable means of addressing individual and collective health care matters. The 75 cent maximum charge is simply another health measure. It serves the health care needs of the patient. It is no minor matter that only a "competent patient, parent or guardian of an infant, committee for an incompetent, or conservator of a conservatee” is qualified to make a written request for release by a physician or hospital of patient records. (Public Health Law § 17.) If the patient is unable to pay, the provider is still obligated to honor the request of the patient regardless of the burden that copying and delivering the copies without charge places on the provider. It is quite obvious that by limiting so precisely (and logically) those who can exercise the right to seek and obtain release of records, the Legislature and the Department of Health desire to prevent a proliferation of requests to physicians and hospitals for frivolous, improper and health-unrelated purposes by inappropriate persons (albeit authorized by the patient). While a patient, for example, may request such records under the Public Health Law, and in that request, direct and authorize the provider to provide the records to a designated third person for a particular purpose, it is this court’s view and finding that the purpose must be grounded strictly in service to the health care and management of the subject of the records. As a matter of law, the provider is required to show the purpose for permitting the records to go to a third person as reflected either in the authorization or as noted at the time and placed in the patient’s file. The concern is not so much whom the patient designates to receive the records but the reason for having the records placed in the hands of a nonsubject or person or entity not a participant in the patient’s health care and manage *573 ment history or requirements. Thus an attorney cannot request the subject’s records but he may be the third person that the patient designates, in writing, to receive them, provided that the reason is related to health care and not to some unrelated use of the records outside the scope and authority provided in the Public Health Law in the public interest of patients and providers. From Public Health Law § 203, which requires the Commissioner of Health to "be a physician, a graduate of an incorporated medical college”, through the extensive listing of the Commissioner’s general powers and duties in section 206, to the mass of entities, conditions, operations and activities addressed in the law, the ringing message is public health care and safety and nothing beyond. There is not a scintilla of proof the Legislature intended sections 17 and 18 of the Public Health Law to serve other than the public interest in health care of our citizens. Certainly, the law was never designed nor intended to impinge upon the CPLR (see, Public Health Law § 18 [10]).
The attempt by the plaintiffs and their counsel to bypass the applicable provisions of the CPLR is rejected by the court as totally without basis in law, equity or fact. As was stated in the cases cited hereinbefore, this is merely an attempt to shortcut an important means whereby the court, by order, determines matters of preaction discovery and production. Experienced counsel must know that the courts are properly jealous of their prerogative to insure that proposed litigation passes muster as properly brought and entitled to a place on already overcrowded court calendars and is free of any glaring deficiency in cause or pleading, existing or proposed. Moreover, persons and entities ought not be harrassed or imposed upon by way of preliminary discovery pursued without notice or permission as a convenient way to escape judicial scrutiny and evaluation.
CPLR 3103 (a) authorizes the court to: "at any time on its own initiative, or on motion of any party or witness, make a protective order denying, limiting, conditioning or regulating the use of any disclosure device. Such order shall be designed to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts.”
Moreover, the court may suspend disclosure and even suppress information by order if it was improperly or irregularly obtained (see, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3120:12A, at 605-607 [where Professor Siegel confirms that the courts come down hard on *574 attempts to deprive others of the benefit of the provisions of the CPLR by intentionally and covertly evading its mandates governing discovery procedures. As Professor Siegel points out, there are degrees of fault in such a course of conduct but the message remains that where the CPLR prescribes, it’s not anyone’s self-serving prerogative to proscribe]; see also, Matter of Weinberg, 129 AD2d 126 [1st Dept 1987]; Matter of Kochovos, 140 AD2d 180 [1st Dept 1988]).
As hereinbefore stated, the court finds that the amended verified complaint is on its face much too general and ambiguous to state a case, and certainly not a class action case seeking to remedy alleged violations in multiple situations where the facts understandably could vary extensively and, in no way, justify the conclusion that the plaintiff seeks, i.e., that there was a "willful” violation of Public Health Law §§ 17 and 18, and per se "unprofessional conduct” on the part of the health providers. It is without basis or justification and clearly premature to assume the categorical posture taken by the plaintiffs’ counsel in this case. The accusations that the defendants are not limiting their charges to reasonable costs and are therefore overcharging should not be explored under Public Health Law provisions, but could and would be addressed in an evidentiary hearing had the plaintiffs properly proceeded pursuant to CPLR 3102 (c) in their pursuit of this discovery. The demands for attorneys’ fees and punitive damages are grossly out of order and beyond any demonstrable legal basis. It is obvious that the claim for compensatory damages must be denied as de minimus at best and injected for pleading and perhaps jurisdictional purposes at worst. The key to the plaintiffs’ case is the demand that the court declare that the 75 cents per paper copy charge in the Public Health Law governs this and all like cases where an attorney, armed with an authorization, seeks discovery to aid in the commencement of an action by patients of a health care provider and it is that key which the court, in the main, has addressed throughout this decision and rejected totally.
One of the more disturbing aspects of the resort by the plaintiffs’ counsel to the Public Health Law for nonnoticed discovery is the fact that while the attorney has obviously instructed his client to demand "complete” copies of the hospital record, there is not the slightest hope of obtaining the "complete” record pursuant to the Public Health Law since the Public Health Law permits substantial "redaction”. In contrast, under CPLR 3102 (c), the court, after hearing, has *575 the power to order discovery and production of the complete record. Query: is the client paying too much, in any event, even at 75 cents per paper copy, for less than the "complete” record and is not the client entitled to seek the complete record forthwith as an essential basis for commencing the action pursuant to the CPLR? We think so as a minimum element in responsible case preparation and the avoidance of what later could prove a serious oversight and irreparable vulnerability. We respect counsel’s appraisal of the client’s needs but see this as a patent flaw and additional proof that reliance upon the Public Health Law is misplaced and misguided.
The court notes that it has reviewed the recent decision in Matter of Casillo v St. John’s Episcopal Hosp. (151 Misc 2d 420 [Sup Ct, Suffolk County, Rohl, J.]) and respectfully declines to follow it for the reasons stated hereinbefore.
Unfortunately, the complaint’s last cause of action for a declaratory judgment completely misses the issue in the dispute between these litigants and if the requested judgment were granted would leave the parties exactly where they now are and facing further uncertainty and disputes.
For the more precise guidance of the litigants, and in the public interest to end this dispute promptly, the court: (1) grants summary judgment to the defendants dismissing the complaint on the ground that it fails to state a cause of action for the relief it seeks, (2) denies summary judgment sought by the plaintiffs, (3) declares that the Public Health Law is a law related exclusively to public health care purposes and is not a statutory alternative to the CPLR to obtain discovery and production of records to aid in the commencement of an action, (4) denies or dismisses as moot all issues and causes of action not otherwise addressed in this decision, and (5) awards costs and disbursements to the defendants.