[996 NYS2d 893]

In the Matter of MICHAEL GRABELL, Petitioner, v NEW YORK CITY POLICE DEPARTMENT, Respondent.

Supreme Court, New York County, December 9, 2014

### APPEARANCES OF COUNSEL

*Levine Sullivan Koch & Schulz, LLP*, New York City (*David A. Schulz* of counsel), and *Yale Law School Media Freedom and Information Access Law Clinic*, New Haven, Connecticut, for petitioner.

*Zachary W. Carter, Corporation Counsel*, New York City (*Elizabeth Edmonds* of counsel), for respondent.

### OPINION OF THE COURT

DORIS LING-COHAN, J.

Petitioner Michael Grabell, a journalist employed by ProPublica, brings this action seeking a judgment declaring that respondent New York City Police Department (NYPD or Department) acted unlawfully in withholding documents that are not properly exempt from disclosure under the Freedom of Information Law (FOIL) (Public Officers Law § 85 *et seq.*), directing the NYPD to provide petitioner with immediate access to all the nonexempt documents that he requested, and awarding petitioner costs and attorneys' fees, pursuant to Public Officers Law § 89 (4) (c).

Background

By letter, dated February 15, 2012, petitioner journalist requested copies of certain documents pertaining to the NYPD's purchase and use of a police vehicle known as the Z-backscatter van (Van). The Van(s) is an unmarked vehicle that contains an X-ray device that can detect drugs, certain bomb-making equipment, and other organic and inorganic matter in vehicles or buildings. The radiation that the device emits does not penetrate its target, but reflects back a visual image. The U.S.

Department of Defense has acquired a number of such Van(s) to assist in detecting roadside and car bombs in Afghanistan.

Petitioner seeks certain records as they would "reveal whether the NYPD has taken steps necessary to protect drivers, passengers and pedestrians from exposure to potentially harmful ionizing radiation." (Grabell aff in support, dated Apr. 8, 2013, ¶ 14 [aff in support].) Petitioner states in his affidavit, and respondent does not dispute, that: backscatter technology, previously deployed in European Union airports, was banned in 2011, because of health concerns; an internal presentation from American Science & Engineering, Inc., the company that manufactures the Van(s), determined that the Van(s) deliver a radiation dose 40% larger than that delivered by a backscatter airport scanner; bystanders present when the Van(s) is in use are exposed to the radiation that the Van(s) emits; and the Transportation Security Administration recently removed all of its backscatter X-ray body scanners from airports in the United States, because the devices failed to comply with privacy requirements established by Congress. Petitioner also states, without dispute, that each of the Van(s) costs between $729,000 and $825,000. (Aff in support ¶ 9.) Moreover, petitioner maintains, and it is not disputed by the NYPD, that "[t]here may be significant health risks associated with the use of backscatter x-ray devices [as] these machines use ionizing radiation, a type of radiation long known to mutate DNA and cause cancer." (Aff in support ¶ 5.)

Finally, petitioner states, again without dispute, that, in August 2011, the United States Customs and Border Protection agency, which used the Van(s) to scan vehicles crossing into and out of the United States, despite repeated testing and analysis of the amount of radiation emitted by such devices, nevertheless, prohibited continued use of the Van(s) to scan occupied vehicles, until approval was granted by the United States Customs and Border Protection Radiation Safety Committee and the Attorney General. (Aff in support ¶ 14.)

Petitioner requested the following documents, by letter dated February 15, 2012:

> "[1.] Any lists or itineraries of past missions/ deployments of the Z-backscatter van as well as any memos, debriefings, or after-action reports on past missions/deployments of the Z-backscatter van.
> "[2.] The department's policies and procedures

regarding the Z-backscatter van as well as any training materials.

"[3.] The final policy decision or interpretation of the law or any legal opinion as to when and in what situations the Z-backscatter van can and cannot be used.

"[4.] Any contracts and supplemental contracting documents regarding the purchase of the Z-backscatter van.

"[5.] Any tests or reports regarding the radiation dose or other health and safety effects of the Z-backscatter van.

"[6.] Any records related to data storage including but not limited to: the type of information stored, length of time for which information is stored, personnel with access to information stored, use of information stored, and any existing privacy protections for information stored.

"[7.] The contents of the image databases used and/or created by the Z-backscatter van." (Verified petition, exhibit A.)

By letter, dated April 18, 2012, the NYPD denied the entire request on the basis of Public Officers Law § 87 (2) (e) (iv) "in that such law enforcement records, if disclosed, would reveal criminal investigative techniques or procedures." In addition, the NYPD based its denial on Public Officers Law § 87 (2) (g), which exempts intra-agency materials from disclosure. (Verified petition, exhibit B.)

By letter, dated May 15, 2012, petitioner appealed the denial of his FOIL request, pointing out, among other things, that "[w]hile portions of [the records requested] may be withheld or redacted under the statutes [cited], the vast majority of the records are public and can be segregated for release." (Verified petition, exhibit C, 1.) By letter, dated December 19, 2012, the Department denied petitioner's appeal pursuant to Public Officers Law § 87 (2) (e) (iv), "because disclosure of the requested records would reveal non-routine investigative techniques or procedures"; pursuant to Public Officers Law § 87 (2) (f), "because the utility of the 'Z-backscatter scanner' as a law enforcement tool designed to protect public safety would be diminished if detailed information pertaining to its functioning and deployment could be used to foil the Z-backscatter van's effectiveness, thus endangering public safety"; and pursuant to

Public Officers Law § 87 (2) (g), "to the extent that the requested records include preliminary data and information which is deliberative and pre-decisional in nature." (Verified petition, exhibit D.)

By its silence on the subject, the NYPD's December 19, 2012 letter effectively acknowledges that the intra-agency exemption is inapplicable, and such argument was not raised in its memorandum of law. The NYPD does not defend its denial of petitioner's appeal on the basis of Public Officers Law § 87 (2) (g) (intra-agency exemption), either in its memorandum of law, or in the affidavit of Richard Daddario, Deputy Commissioner of Counterterrorism. Accordingly, the court deems the NYPD to have abandoned that exemption as a ground for withholding the documents responsive to petitioner's FOIL request. In any event, petitioner argues that Public Officers Law § 87 (2) (g) applies neither to instructions to staff that affect the public, nor to final policy decisions.

After a conference with the court, by stipulation dated August 26, 2014, petitioner agreed to modify his FOIL requests, addressing some of NYPD's concerns raised during settlement discussions and the court permits such modified FOIL requests. Petitioner narrowed or abandoned four of the seven categories of documents previously requested. Accordingly, the FOIL requests now before the court are limited to the following six requests:

> "[1.] Summary reports or after-action reports of past deployments of the vans that are not related to any ongoing investigation.
>
> "[2.] The Department's policies and procedures regarding the Z-backscatter van as well as any training materials.
>
> "[3.] The final policy decision or interpretation of the law or any legal opinion as to when and in what situations the Z-backscatter van can and cannot be used.
>
> "[4.] Records sufficient to disclose both the total aggregate cost of the Z Backscatter Vans purchased by or for the NYPD and the total number of vans purchased.
>
> "[5.] Any tests or reports regarding the radiation dose or other health and safety effects of the Z-backscatter van.
>
> "[6.] NYPD's final policy governing retention and

storage of data generated by the Z Backscatter Vans, and other documents sufficient to disclose NYPD's policies regarding the length of time images are stored or maintained, the process by which images are deleted or destroyed, the number and type of individuals permitted to access stored images, and any restrictions NYPD imposes on the use of the images."

Despite petitioner's new sharply narrowed requests for documents, NYPD maintains its original objections to their disclosure.

Discussion

Standard of Review in FOIL Cases

"The premise of FOIL is 'that the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government.'" (*Matter of Newsday, Inc. v State Dept. of Transp.*, 5 NY3d 84, 88 [2005], quoting *Matter of Fink v Lefkowitz*, 47 NY2d 567, 571 [1979].) The purpose of requiring disclosure of governmental records is "to assist the public in formulating 'intelligent, informed choices with respect to both the direction and scope of governmental activities.'" (*Matter of New York State United Teachers v Brighter Choice Charter School*, 15 NY3d 560, 564 [2010], quoting *Matter of Fink*, 47 NY2d at 571.) FOIL requires state and municipal agencies to provide the public with all records pertaining to the agencies' operations, that are not specifically exempted from disclosure. (*Matter of Whitfield v Bailey*, 80 AD3d 417, 418-419 [1st Dept 2011].) The statutory exemptions to disclosure are to be "narrowly interpreted so that the public is granted maximum access to the records of government" (*Matter of Data Tree, LLC v Romaine*, 9 NY3d 454, 462 [2007]; *see also Matter of Markowitz v Serio*, 11 NY3d 43, 51 [2008]).

"[T]he burden of proof rests solely with the [agency] to justify the denial of access to the requested records." (*Data Tree, LLC*, 9 NY3d at 463.) In fact, where only a portion of a given document is properly exempt, the agency is nonetheless obligated to produce a redacted version that discloses all the nonexempt information. (*Matter of Schenectady County Socy. for the Prevention of Cruelty to Animals, Inc. v Mills*, 18 NY3d 42, 45-46 [2011]; *Data Tree, LLC*, 9 NY3d at 464.)

Contrary to respondent's argument that this court should defer to the NYPD's expert knowledge, it is settled law that a court reviewing an agency's failure to disclose requested rec-

ords owes no deference to the agency's decision, but must "presume that all records of a public agency are open to public inspection . . . , and must require the agency to bear the burden of showing that the records fall squarely within an exemption to disclosure." (*Matter of New York Comm. for Occupational Safety & Health v Bloomberg*, 72 AD3d 153, 158 [1st Dept 2010]; *see also* Public Officers Law § 89 [4] [b]; [5] [e]; *Matter of Markowitz v Serio*, 11 NY3d 43, 50-51 [2008]; *Matter of Capital Newspapers Div. of Hearst Corp. v Burns*, 67 NY2d 562, 566 [1986].) Such a showing must be made by "articulating a particularized and specific justification for denying access." (*Matter of Capital Newspapers Div. of Hearst Corp. v Burns*, 67 NY2d 562, 566 [1986]; *see also Matter of New York State Rifle & Pistol Assn., Inc. v Kelly*, 55 AD3d 222, 225 [1st Dept 2008].)

Moreover, as in the recent case of *Hashmi v New York City Police Dept.* (46 Misc 3d 712 [Sup Ct, NY County 2014]), this court will not adopt the federal standard as to Freedom of Information Act requests, as such is not contemplated by this state's current FOIL statute. It is the province of the legislature to change the applicable statute.

Thus, as explained above, it is well settled that the starting point for any FOIL inquiry is that the public has the right to know and it is the burden of the government to justify the denial of access. (*See Data Tree, LLC*, 9 NY3d at 463.) Respondent NYPD has articulated only two reasons for exemption: (1) the "law enforcement/investigatory exemption" (Public Officers Law § 87 [2] [e]); and (2) the "endangerment of life and safety of any person exemption" (Public Officers Law § 87 [2] [f]). Both of such exemptions are to be "narrowly interpreted." (*See Data Tree, LLC v Romaine*, 9 NY3d at 462.)

Public Officers Law § 87 (2) (e)—Law Enforcement/ Investigatory Exemption

Public Officers Law § 87 (2) (e) exempts from disclosure records "compiled for law enforcement purposes and which, if disclosed, would: . . . iv. reveal criminal investigative techniques or procedures, except routine techniques and procedures." This exemption is properly invoked only where there is " 'a substantial likelihood that violators could evade detection by deliberately tailoring their conduct in anticipation of avenues of inquiry to be pursued by agency personnel.' " (*Matter of Bellamy v New York City Police Dept.*, 59 AD3d 353, 355 [1st Dept 2009], *appeal after remand* 80 AD3d 442, *recalled*

*and vacated on other grounds* 87 AD3d 874, quoting *Matter of Fink*, 47 NY2d at 572.) In *Matter of Fink*, the Court held that portions of the office manual of the Deputy Attorney General and Special Prosecutor for Nursing Homes, which constituted "detailed, specialized methods" of conducting an audit of the books of nursing home operators, was exempt from disclosure, because release of the information would "actually countenance[ ] fraud by enabling miscreants to alter their books and activities to minimize the possibility of being brought to task for criminal activities." (*Matter of Fink*, 47 NY2d at 572-573.) Subsequently, in *Matter of Spencer v New York State Police* (187 AD2d 919 [3d Dept 1992]), the Court held that documents describing the method by which the State Police gathered information about the petitioner, a convicted murderer, and his accomplices, were exempt from disclosure, pursuant to Public Officers Law § 87 (2) (e) (iv).

Public Officers Law § 87 (2) (f)—Endangerment of Life and Safety of Any Person Exemption

Public Officers Law § 87 (2) (f) exempts records that "if disclosed could endanger the life or safety of any person." This exemption is generally invoked when a specific person or group of people would be endangered by the disclosure of the documents sought. (*See e.g. Matter of New York Times Co. v City of N.Y. Police Dept.*, 103 AD3d 405, 407 [1st Dept 2013]; *Matter of Hynes v Fischer*, 101 AD3d 1188, 1190 [3d Dept 2012]; *Matter of Bellamy*, 87 AD3d at 875.) The exemption may not be invoked on the basis of mere speculation that harm will result from disclosure of the documents sought. (*Matter of Mack v Howard*, 91 AD3d 1315, 1316 [4th Dept 2012]; *Matter of New York Veteran Police Assn. v New York City Police Dept. Art. I Pension Fund*, 92 AD2d 772, 773 [1st Dept 1983], *revd on other grounds* 61 NY2d 659 [1983].)

Application of the Two Exemptions to Petitioner's Request

█ The NYPD has submitted an affidavit from Commissioner Richard Daddario, of which only nine paragraphs (four pages) are even directly relevant to the requested documents. In his affidavit, Mr. Daddario takes the blanket position that disclosing "any" documents responsive to petitioner's FOIL request would "reveal criminal investigative techniques or procedures" and "endanger the life or safety" of police officers and the people of New York City by allowing aspiring terrorists to circumvent the effectiveness of the Van. (Daddario aff ¶ 6.)

In *Matter of Dilworth v Westchester County Dept. of Correction* (93 AD3d 722, 725 [2d Dept 2012]), the Court contrasted a

disclosure of a record of electronic video surveillance of petitioner from one camera angle, on the particular day on which he claimed to have slipped and suffered an injury, to all records of electronic video surveillance of him throughout his detention at the jail. The former was disclosable. (*Id.*) The latter could be withheld, however, on the ground that such disclosure would inherently disclose gaps in the camera's ability to survey. (*Id.*)

Unlike the surveillance cameras in *Matter of Dilworth*, the Van(s) at issue here are mobile, and a record of where they have been deployed does not, without more, necessarily allow an inference of locations in which they will not be deployed. Although, one could speculate that the NYPD has deployed the Van(s) in locations that can be defined by one or more characteristics, such that someone might thereby infer locations in which the Van(s) would likely not be used, nonetheless, Mr. Daddario does not state in his affidavit this specific possibility as a fact, even at this level of generality.

Rather, Mr. Daddario merely states that

> "disclosure of records that contain [the] categories of information [set forth in petitioner's first request] would tend to reveal the kind of mission for which the NYPD would or would not use the technology[,] and that [s]uch records *might include* descriptions of areas being surveyed, the reasons for surveillance, the NYPD personnel (and their respective ranks) involved in such surveillance, and the dates, times and duration of such surveillance." (Daddario aff ¶ 20 [emphasis added].)

Fully taking into account the seriousness of Mr. Daddario's concerns, this court, nevertheless, concludes that Mr. Daddario's mere speculation, that any records about the NYPD's prior use of the Van(s) could lead to a circumvention of their future effectiveness, does not rise to the required showing of "a substantial likelihood" that such records would allow criminals to tailor their behavior so as to evade detection (*Matter of Bellamy v New York City Police Dept.*, 59 AD3d at 355), and it "falls far short of 'articulating a particularized and specific justification for denying access,'" which the law requires. (*Matter of New York Times Co. v New York State Dept. of Health*, 243 AD2d 157, 160 [3d Dept 1998], quoting *Matter of Capital Newspapers Div.*, 67 NY2d at 566.) In any event, as noted above, petitioner has significantly limited the first requested item, to only summary reports or after-action reports of past

deployments of the Van(s) that are not related to any ongoing investigation. (Stipulation dated Aug. 26, 2014, with letter Sept. 9, 2013 attached.)

With regard to petitioner's second item, a request for the NYPD's Van-related policies, procedures and training materials, Mr. Daddario discusses solely such documents as might disclose when the Van(s) may not be used. While those documents, as with the documents responsive to petitioner's third request (*see* below), may be withheld, the NYPD may not assert a blanket exemption for all the documents responsive to the second request. (*See Matter of Gould v New York City Police Dept.*, 89 NY2d 267, 275 [1996] [blanket nondisclosure of categories of documents is "inimical to FOIL's policy of open government"].) Rather, the NYPD must redact the documents that are responsive to petitioner's second request, withholding such portions of them as come plainly within Public Officers Law § 87 (2) (e) (iv), and disclose the remainder. (*See Matter of Schenectady County Socy. for the Prevention of Cruelty to Animals, Inc. v Mills*, 18 NY3d at 45-46; *Matter of Washington Post Co. v New York State Ins. Dept.*, 61 NY2d 557, 567 [1984].)

The third request, compliance with which would disclose "when and in what situations" the Van(s) cannot be used, clearly comes within the ambit of Public Officers Law § 87 (2) (e) (iv), inasmuch as, with regard to such situations, it would extend a free pass from detection by the Van(s). In addition, "any legal opinion," as to when the Van(s) can and cannot be used is protected by the attorney-client privilege (CPLR 4503 [a]), and it is, therefore, exempt from disclosure pursuant to Public Officers Law § 87 (2) (a), which permits an agency to withhold documents that "are specifically exempted from disclosure by state or federal statute." Thus, item three need not be provided to petitioner.

With regard to the petitioner's fourth request for records sufficient to disclose both the total aggregate cost of the van(s) purchased by or for the NYPD and the total number of Van(s) purchased, Mr. Daddario states that knowledge of the number of Vans in use "would undermine any deterrent effect achieved through the lack of more specific information," and that "knowledge of the number of [V]ans in use would help terrorists determine locations at which the [V]ans are likely to be present and design an attack to overwhelm the Department's available resources." (Daddario aff ¶ 22.)

It is not disputed, however, that much information about the equipment in the Van(s), however, is already public. (*See* Gra-

bell affirmation ¶¶ 4-6.) Additionally, Mr. Daddario's speculation notwithstanding, mere knowledge of the number of Van(s) purchased by the NYPD and the cost of the Van(s) would hardly create a "substantial likelihood" (*Matter of Fink*, 47 NY2d at 572) that, on the basis of that knowledge, a would-be criminal could infer the number of Van(s) deployed at any given time, or the locations, some of which would, presumably, be routes, rather than fixed points, where they might be deployed.

With regard to petitioner's fifth request, Mr. Daddario states that the disclosure of any documents regarding the radiation dose or other health and safety effects of the Van(s) "would provide terrorists with the knowledge needed to determine the power and capacity of the [V]ans' x-ray capabilities [and that] [d]isclosure of such information would permit a terrorist to tailor his or her conduct so as to exploit any limitations in the [V]ans' x-ray and backscatter capabilities." (Daddario aff ¶ 24.)

However, the NYPD disputes neither that, as noted above, the Van(s) deliver a radiation dose approximately 40% larger than that delivered by a backscatter airport scanner, nor that this information is publicly available. Secondly, Mr. Daddario offers not even a hint as to how knowledge of the Van(s)' X-ray capabilities would allow a would-be criminal to tailor his or her actions so as to thwart detection by the mobile Van(s). Mr. Daddario's conclusory statement, as to how a criminal might benefit from reading the information as to any health risks sought by petitioner, is patently insufficient to meet NYPD's burden to establish that the NYPD may properly withhold documents responsive to petitioner's fifth FOIL request. (*Matter of Dilworth*, 93 AD3d at 724; *see also Data Tree, LLC*, 9 NY3d at 463.)

As to petitioner's sixth FOIL request, which originally sought "records related to data storage including but not limited to: the type of information stored, length of time for which information is stored, personnel with access to information stored, use of information stored, and any existing privacy protections for information stored," petitioner has narrowed significantly his request to focus on NYPD's confidentiality policy as to the data maintained, limiting his request to only

> "NYPD's final policy governing retention and storage of data generated by the Z Backscatter Vans, and other documents sufficient to disclose NYPD's policies regarding the length of time images are stored or maintained, the process by which images

are deleted or destroyed, the number and type of individuals permitted to access stored images, and any restrictions NYPD imposes on the use of the images."

As to this category of documents, Mr. Daddario merely states:

"such records would disclose the targets, potential targets, or types of potential targets, of NYPD's ongoing criminal investigations. Further, such information would be especially useful to terrorists and would allow them to avoid engaging in activities likely to be captured by the van, or to time their activities so that NYPD could not connect significant events. Revealing the 'use of information stored' could also reveal other confidential non-routine law enforcement techniques unrelated to the use of the van, or impede other criminal and/or national-security related investigations and could disclose the design and limits of NYPD networks and information systems." (Daddario aff ¶ 23.)[1]

Again, the speculative nature of Daddario's opinion carries no weight, as it is not fully explained how releasing the NYPD's final policy governing the retention and storage of data and the access of the class of individuals permitted access, for example, would allow potential criminals "to avoid engaging in activities likely to be captured by the van." (*Id.*) To the extent that such documents concerning data retention may "impede other criminal and/or national security related investigations," such may be redacted, after in camera review. (*Id.*)

In sum, with the exceptions noted above, Mr. Daddario's affidavit consists largely of repeated, conclusory statements that the disclosure of any records pertaining to the Van(s) would allow would-be criminals to circumvent the Van(s)' potential effectiveness. However, the standard to exempt a document from disclosure is quite high in that, a party seeking to withhold documents that are sought pursuant to FOIL, must tender a "factual basis" for claiming that the documents come within one or another exemption. (*Church of Scientology of N.Y. v State of New York*, 46 NY2d 906, 908 [1979].) Further, it is well settled that it is the government's burden to justify the denial of access. (*See Data Tree, LLC*, 9 NY3d at 463.) In *Matter of Gould*, the Court explained that the statutory exemptions to disclosure, themselves, "strike a balance between the public's

---

1. NYPD did not submit any affidavits in opposition in response to petitioner's narrowed requests.

right to open government and the inherent risks carried by disclosure of police files." (89 NY2d at 278.) Accordingly, the NYPD must articulate a " 'particularized and specific justification' " for claiming an exemption. (*Id.* at 275, quoting *Matter of Fink,* 47 NY2d at 571.) It has not done so here, in relation to either Public Officers Law § 87 (2) (e) (iv) or (f) and has failed in carrying its burden.

Moreover, the NYPD also argues that it does not have documents responsive to petitioner's sixth request, which is inherently inconsistent with Mr. Daddario's affidavit. Specifically, NYPD cites to *Matter of Rattley v New York City Police Dept.* (96 NY2d 873, 875 [2001]), arguing that, because the verified answer states that the NYPD does not have in its possession any records responsive to petitioner's request No. 6, except for a few test-photos used exclusively for training purposes (verified answer ¶¶ 37-39), the petition must be denied as moot, with regard to those requests. (*See also Matter of Alicea v New York City Police Dept.*, 287 AD2d 286 [1st Dept 2001].) However, NYPD bases such claim essentially on information and belief. Specifically, it merely submits an answer verified by Doram Tamati (a deputy managing attorney in the NYPD's Legal Bureau), in which he states that "the books and records of the [NYPD] and information received from other officers and employees of the [NYPD]" are the basis of his knowledge and belief that the contents of the answer are true. Notably, in sharp contrast to Mr. Tamati, Mr. Daddario never specifically states that there are no records responsive to petitioner's sixth request, and instead merely states that such records

> "would disclose targets, potential targets, or types of potential targets, of NYPD's ongoing criminal investigations. Further, such information would be especially useful to terrorists and would allow them to avoid engaging in activities likely to be captured by the [V]an, or to time their activities so that NYPD could not connect significant events. Revealing the 'use of information stored' could also reveal other confidential non-routine law enforcement techniques unrelated to the use of the [V]an, or impede other criminal and/or national security related investigations and could disclose the design and limits of NYPD's networks and information systems." (Daddario aff ¶ 23.)

If, indeed, the NYPD has no documents reflecting policies regarding: the length of time for which information gathered

by the Van(s) is to be kept; who, within the NYPD, is authorized to have access to the images created; or any protections for the privacy of those whose images may have been captured by the Van(s), then paragraph 23 of Mr. Daddario's affidavit is inexplicable in that he discusses why certain documents that allegedly do not exist should not be disclosed (were they to exist). Given this inconsistency, the NYPD shall submit an affidavit, to the court, of a person who was engaged in, or in charge of the search that the NYPD made for documents responsive to petitioner's sixth FOIL request, and who can describe that search, and the results thereof, on the basis of personal knowledge, within 30 days of this order, or turn over all documents responsive to petitioner's sixth request.[2]

Attorneys' Fees

 Petitioner's request for attorneys' fees is granted as provided below. Public Officers Law § 89 (4) (c) provides that a court reviewing an agency's failure to disclose documents responsive to a FOIL request may assess attorneys' fees and other litigation costs against the agency when the petitioner "substantially prevailed," and when "the agency had no reasonable basis for denying access." Here, the NYPD denied petitioner's request in toto, and inasmuch as the court is ordering the NYPD to provide petitioner with at least redacted versions of documents responsive to four of the five requests in connection with which the NYPD acknowledges that it has documents, petitioner has "substantially prevailed." While the NYPD may have had a reasonable basis for withholding some of the documents that are responsive to petitioner's first five requests, it had no reasonable basis for withholding them all, or for failing to provide some of them in redacted form. Most egregiously, perhaps, it had no reasonable basis, or at least it has not articulated any such basis, for withholding documents responsive to petitioner's fifth request for documents. (*See infra* at 213-214.) Accordingly, NYPD shall pay petitioner's attorneys' fees.

Citing *Matter of Friedland v Maloney* (148 AD2d 814 [3d Dept 1989]), the NYPD argues that, where an agency has begun to "work[ ] on and respond[ ] to a FOIL request prior to the commencement of a proceeding to compel disclosure, the petitioner cannot have substantially prevailed as a matter of law, since it is not the initiation of the proceeding that caused

---

**2.** As indicated above, it is noted that petitioner's seventh request has been withdrawn.

the search for and release of the documents." (Respondent's mem of law at 18.) In *Matter of Friedland*, the agency notified the petitioner, one day before the proceeding was returnable, that it was treating the appeal as one from a constructive denial of her request, and that 45 pages of records would be forwarded to petitioner. The court proceeding was adjourned several times, and within three months the agency disclosed all the documents that petitioner had requested. Here, by glaring contrast, the NYPD denied petitioner's administrative appeal, disclosed not a single document, even those in the public domain, and took the position in this proceeding that not a single document should be released to petitioner, even after petitioner, in good faith, narrowly sharpened his request to address concerns of the NYPD.

It is noted that, significantly, respondent NYPD has not disputed the potential health risks inherent in the use of backscatter X-ray technology. While this court is cognizant and sensitive to concerns about terrorism, being located less than a mile from the 9-11 site, and having seen firsthand the effects of terrorist destruction, nonetheless, the hallmark of our great nation is that it is a democracy, with a transparent government.

> "[T]he public is vested with an inherent right to know and that official secrecy is anathematic to our form of government. Thus, the statute affords the public the means to attain information concerning the day-to-day operations of State government. By permitting access to official information long shielded from public view, the act permits the electorate to have sufficient information in order to make intelligent, informed choices with respect to both the direction and scope of governmental activities . . . Moreover, judicious use of the provisions of the law can be a remarkably effective device in exposing waste, negligence and abuses on the part of government; in short, 'to hold the governors accountable to the governed.' " (*Matter of Fink v Lefkowitz*, 47 NY2d 567, 571 [1979] [citation omitted].)

It is only through disclosure, public review and scrutiny, that potentially dangerous equipment and/or techniques, can be called into question, for the health and well-being of the public at large. Nevertheless, as this is also an issue of public safety, prior to the release of the above discussed documents, appropriate redactions, as previously explained, will be permitted.

Accordingly, the petition is denied only as to petitioner's third request (the final policy decision or interpretation of the law or any legal opinion as to when and in what situations the Z-backscatter Van can and cannot be used) and the remaining petition is granted as follows: ordered and adjudged that respondent New York City Police Department acted unlawfully in withholding from petitioner Michael Grabell documents that are not properly exempt from disclosure under the Freedom of Information Law (Public Officers Law § 85 *et seq.*); and it is further ordered that respondent New York City Police Department shall produce the following:

1. All documents responsive to petitioner's request (item number 1) for summary reports or after-action reports of past deployments of the Van(s) that are not related to any ongoing investigation, redacted to omit any information explicitly describing a limitation, technical or other, on the use of the Van(s), the dates upon which one or more Van(s) were deployed, and any information expressly disclosing the reason or reasons for any particular deployment of the Van(s);

2. All documents responsive to petitioner's request (item number 2) for the Department's policies and procedures regarding the Z-backscatter Van(s) as well as any training materials, redacted to omit any information explicitly describing a limitation, technical or other, on the use of the Van(s), or any information expressly disclosing a reason for a particular deployment of the Van(s);

3. As to item number 4, records sufficient to disclose both the total aggregate cost of the Z-backscatter Van(s) purchased by or for the NYPD and the total number of vans purchased;

4. As to item number 5, any tests or reports regarding the radiation dose or other health and safety effects of the Z-backscatter Van(s); and it is further ordered that the NYPD shall submit to this court, within 30 days, an affidavit from a person who can describe the search that the NYPD made for documents responsive to petitioner's sixth FOIL request, and the results of such search. *Such affidavit shall be sent to the court in an envelope with a copy of this order attached to the outside of the envelope* and also provided to petitioner.[3]

---

**3.** Counsel may stipulate on consent to an extension, if necessary.